COMMONWEALTH vs. GERALD J. BOWLEN & another.

Essex.   January 3, 1967. — February 3, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & SPIEGEL, JJ

*Search and Seizure. Constitutional Law,* Search and seizure, Assistance
   of counsel. *Evidence,* Credibility of witness. *Witness,* Credibility.
   *Arrest.*

Where the defendant in a criminal case, about one hour after he was
   validly arrested, arrived at a police station and was there subjected to
   a search preliminary to being confined in a cell, the search was not
   invalid as being too remote in time and place from the arrest to be
   incidental thereto.   [657]
Seizure of a substantial sum of money found in the pockets of one, sub-
   sequently charged with armed robbery, upon his being lawfully searched
   as an incident of his valid arrest for infractions of the motor vehicle
   laws was not precluded by the circumstance that the money was not the
   "fruit" of the offences for which he was arrested.   [657–658]
The admissibility in a criminal case of the records of prior convictions of
   the defendant offered under G. L. c. 233, § 21, was not dependent on the
   Commonwealth's proving compliance with all constitutional requirements
   in the proceedings leading to the prior convictions.   [659]
Evidence in a criminal proceeding for armed robbery committed in
   Haverhill, that a Haverhill police officer had been present when the
   victim and a witness identified the defendant as the robber from a photo-
   graph in the police files in Boston, and that the Haverhill officer arrested
   the defendant after he had been "picked up" by the Boston police war-
   ranted findings that the Haverhill officer had probable cause to believe
   that the defendant had committed the robbery, a felony, and that his
   arrest of the defendant was valid, irrespective of the validity of the
   prior arrest by the Boston police.   [659–660]
Miscarriage of justice requiring setting aside a verdict of guilty in a
   criminal case did not appear to be required merely by reason of a state-
   ment by a witness that he had "picked out a mug shot of" the defendant
   at police headquarters.   [660]

INDICTMENT found and returned in the Superior Court on
September 11, 1963.

Motions to suppress were heard by *Taveira, J.,* and
*Paquet, J.*   The case was tried before *Paquet, J.*

*Chester C. Paris* for the defendant Bowlen (*Gerald M.
Lewis,* for the defendant Gilday, with him).

*John N. Nestor,* Assistant District Attorney, for the Com-
monwealth.

SPIEGEL, J. The defendants were tried on an indictment for armed robbery. The jury returned a verdict of guilty as to each defendant. The case was tried subject to G. L. c. 278, §§ 33A–33G, and is here by appeals. The defendant Gilday filed three assignments of error. The defendant Bowlen filed five assignments of error but argued only one of them. Those not argued are deemed waived.

1. The defendant Gilday first assigns as error the denial of his motion before trial for "Return of Seized Property and Suppression of Evidence."

At the hearing on that motion the judge could have found the following facts. On Sunday, August 18, 1963, Gilday was involved in an automobile accident in Middleton. When the Middleton police arrived on the scene he was unable to produce his driver's license or registration certificate. There was some delay due to Gilday's searching through various articles in his car for the papers. The police, by radio, inquired about the license and registration from the Registry of Motor Vehicles. "It being Sunday, there was considerable delay [in] having this information returned to . . . [them]." At 5:20 P.M., about two hours after the police arrived, he was arrested and charged with several motor vehicle violations. His physical condition was "dazed" and his eyes were "glassy." He was taken to a hospital for treatment and from there to the Danvers police station. He arrived at the police station about 6:30 P.M. where he was booked and subjected to a search which revealed that he had approximately $1,700 in currency in his pockets. The cash and some other items of personal property were retained by the Middleton police.

The robbery for which these defendants were tried occurred on the previous day in Haverhill. An inspector from the Haverhill police was notified by the Middleton police of the discovery of the large sum of money in Gilday's possession. The inspector came to the police station later that evening, bringing with him the victim of the robbery who subsequently identified Gilday and some of the money. The inspector thereupon instructed the Middleton

police to keep the money under their control in connection with the robbery, and to put Gilday under a detainer. The inspector returned shortly with a warrant for Gilday's arrest for the robbery.

Gilday, in his unnecessarily lengthy brief, cites over 140 cases most of which have but a peripheral bearing on the issues before us. We make no attempt to discuss this morass of cases. The essence of his argument is that he was searched without a warrant, and not incident to an arrest, in violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

The validity of Gilday's arrest is not challenged. At most, he seems to argue that the search was too remote in time and place to be "incident" to his lawful arrest. See *Preston* v. *United States,* 376 U. S. 364. We do not agree. The search of his pockets at the Danvers police station was pursuant to his arrest and incarceration. *Commonwealth* v. *Lawton,* 348 Mass. 129, 134. The arresting officer was not obliged to complete a search at the instant of the arrest. A search of a person about to be left alone in a cell would, in all likelihood, be more thorough than at the scene of his arrest. We do not believe that the Fourth Amendment prohibits the procedure of removing the contents of the pockets of a prisoner who is about to be locked up, even though it is done at a police station and not at the scene of the arrest. Such a search is pursuant to an arrest, even though some time has elapsed between the apprehension of the prisoner and his incarceration.

In the *Preston* case, *supra,* the defendant's car was taken to a garage and searched some time after the defendant's arrest. The case did not involve the search of a person pursuant to incarceration, which, so far as we can discern, has never been held to violate the Fourth Amendment so long as the arrest itself was valid. See *United States* v. *Di Re,* 332 U. S. 581, 587; *Beck* v. *Ohio,* 379 U. S. 89, 91.

Gilday next argues, in effect, that even if the search were made pursuant to a valid arrest, the seizure of the money

was not permitted under the Fourth Amendment because it was not the "fruits of a crime" for which he was arrested. The case of *Harris* v. *United States,* 331 U. S. 145, makes it clear that the mere fact that the defendant was arrested for one crime does not preclude the police from seizing the fruits of another crime which they discover pursuant to a lawful search. The court said at page 154, "This Court has frequently recognized the distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including . . . *the fruits of crime such as stolen property* . . ."(emphasis supplied). The warrants in that case were for certain checks which were the instrumentalities of the crimes for which the warrants were issued. In the course of the search, a sealed envelope containing some stolen draft cards was found in a bureau drawer in the defendant's apartment. The court held that the seizure of the draft cards was not prohibited by the Fourth Amendment. Thus the "fruits of crime" which are seized do not have to be the fruits of the crime for which the defendant was arrested.

Even the dissenters in the *Harris* case acknowledged the reasonableness of searching a man's pockets pursuant to arrest. What they objected to was the "indulgence in the fiction that the recesses of a man's house are like the pockets of the clothes he wears at the time of his arrest. . . . The only exceptions to the safeguard of a warrant . . . are those which the common law recognized as inherent limitations of the policy which found expression in the Fourth Amendment . . . where the warrant for the arrest of a person carries with it *authority to seize all that is on the person* . . ." (emphasis supplied). *Harris, supra,* pp. 164, 168 (dissenting opinion).

At the trial Gilday renewed his motion to suppress the evidence. The judge denied this motion without a hearing. There was no error.

2. Assignments 2 and 3. Gilday argues that records of two "out-of-state" convictions should not have been admitted pursuant to G. L. c. 233, § 21, because the Commonwealth did not show that he was represented by counsel during the prosecution which led to those convictions. The thrust of his contention is to require the Commonwealth to prove that the proceedings leading to the prior convictions complied with every constitutional requirement. There is no merit to this argument.

3. The only assignment of error argued by the defendant Bowlen is the judge's denial of his motion before trial to suppress evidence which he alleges was obtained "as a result of an illegal arrest."[1]

Bowlen's contention is that a "John Doe" warrant which was issued for his arrest was defective under the Fourth and Fourteenth Amendments to the Federal Constitution because (1) "there was no probable cause stated in the complaint to justify the issuance of the arrest warrant," and (2) "the warrant under which the defendant was arrested was a general warrant as it did not specify the person to be seized."

There was evidence that on August 29, 1963, the victim of the robbery and one of the witnesses traveled to Boston police headquarters where they picked out Bowlen's picture from the police identification files. The Boston police were aware of this identification. Bowlen was "picked up" on September 6, 1963, by the Boston police. The Haverhill police were notified, and shortly thereafter sent an inspector to Boston who arrested Bowlen for the robbery. The arresting officer from the Haverhill police had been present when the victim and a witness picked out Bowlen's photograph, from which he was identified.

The testimony warranted findings that the Haverhill officer made the arrest in the belief that a felony had been committed by Bowlen and that he had probable cause to so

---

[1] The record shows that a hearing was held on the defendant's motion. The sole ground relied on in the motion was the invalidity of the "John Doe" warrant.

believe.    Thus it is irrelevant that the warrant may have been defective.    *Commonwealth* v. *Holmes,* 344 Mass. 524. *Commonwealth* v. *Morrissey, ante,* 505.

Even if the arrest by the Boston police was not based on probable cause or was based on a defective warrant, the subsequent arrest by the Haverhill police was not thereby invalidated.    The validity of the arrest by the prosecuting authority cannot be made to depend on the events leading up to the confrontation between the accused and the arresting officer.    Once they are face to face, the arresting officer need only have a valid warrant or probable cause to believe a felony had been committed.

In the case at bar the only "fruit" of the alleged illegal arrest by the police officers of one jurisdiction was the subsequent valid arrest by the police of another jurisdiction. The Supreme Court of the United States has held that even a defendant who has been brought into the jurisdiction by kidnapping cannot challenge the jurisdiction of the court to try him.    *Frisbie, Warden* v. *Collins,* 342 U. S. 519.

4.    Bowlen argues that a statement by a witness that he "picked out a mug shot of Bowlen" at Boston police headquarters was so prejudicial that the verdict should be set aside even though no objection was made at the trial and no assignment of error on this point is before us.    He urges us to "place . . . [this matter] within that category of cases in which this Court has considered matters not raised at the trial in order to prevent a miscarriage of justice," although he rightly concedes that "generally a question of law cannot be raised for the first time in a brief filed in this Court.    *Commonwealth* v. *Skalberg,* 333 Mass. 255, 256."

From our review of the entire record we are persuaded that there has been no miscarriage of justice.    See *Commonwealth* v. *Conroy,* 333 Mass. 751, 756–757, and cases cited.

*Judgments affirmed.*