**STATE of Maine**

v.

**Frederick J. DUBAY.**

Supreme Judicial Court of Maine.

Jan. 10, 1974.

---

David M. Cox, County Atty., Bangor, for plaintiff.

Paine, Cohen, Lynch, Weatherbee & Kobritz, by Peter M. Weatherbee, Bangor, for defendant.

Before DUFRESNE, C. J., and WERNICK, ARCHIBALD, POMEROY and WEBBER, JJ.

WERNICK, Justice.

This case arises from an indictment charging that defendant had committed the felony of being in possession of "LSD–25", (22 M.R.S.A. § 2212–B). With the consent of the parties who have stipulated the relevant facts, the Justice presiding in the Superior Court (Penobscot County), pursuant to Rule 37A M.R.Crim.P., has reported for this Court's determination the question of the

"legality of the custodial search of the defendant's personal belongings raised within the Agreed Statement of Facts."

On February 23, 1972 defendant was arrested for being intoxicated in Millinocket, Maine. Taken into police custody, he was transported to the Millinocket Police Station where he was "booked" and "locked-up."[1] Before defendant was confined, a member of the Millinocket police depart-

---

1. Defendant does not dispute that his incarceration was lawful.

ment made a full search of his person. A wallet discovered during the course of the search was removed from defendant's person and control. Without defendant's consent, it was opened and its contents examined. When he discovered a ball of tinfoil in the wallet, the police officer "unravelled" it, thus exposing to view a crushed pill, orange in color, which the officer forthwith seized. Subsequent chemical analysis corroborated that the crushed orange pill was "d-lysergic acid diethylamide (LSD–25)", an unlawful substance.

Defendant was thereafter arrested on a warrant charging him with the felony of possession of "LSD–25" in contravention of 22 M.R.S.A. § 2212–B. After probable cause was found by the District Court (Thirteenth District, Northern Penobscot), defendant was bound over to the May 1972 Term of the Superior Court (Penobscot County). The present indictment accusing defendant of possessing "LSD–25" in violation of 22 M.R.S.A. § 2212–B was returned early in September, 1972.[2]

Pursuant to Rule 41 M.R.Crim.P., on September 25, 1972, defendant moved in the Superior Court to suppress, for use as evidence against him, the crushed orange pill (as alleged to be "LSD–25") on the ground that it had been

"seized from his wallet as the result of an illegal search and seizure."

Defendant's claim of illegality is predicated entirely upon asserted violations of the Fourth Amendment, as binding upon the States by incorporation into the Due Process Clause of the Fourteenth Amendment, of the Constitution of the United States.

Since it has been generally recognized that one lawfully arrested on a charge of criminal conduct and lawfully to be detained by incarceration pending disposition of the charge may, in contemplation of such confinement, be subjected to a warrantless search of his person consistently with federal Fourth-Fourteenth Amendment guarantees,[3] defendant here concedes that

"the Millinocket Police officers were justified in conducting a custodial search . . . [of defendant's person] to check for any personal items which might be used in escape or to hurt himself or others or introduce contraband . . . [in] the lock-up area."

Defendant maintains that there was an infringement upon his federal Fourth-Fourteenth Amendment protections, however, when the police officer, *after he had removed the wallet from defendant's person and control,* (1) thereupon made a sep-

---

2. A prior indictment returned in May of 1972 was dismissed. The record before us fails to disclose the circumstances surrounding the dismissal or the reason for it.

3. Some Courts have arrived at this conclusion on the theory that Fourth-Fourteenth Amendment protections are not applicable to such a search because it has no initial purpose to uncover contraband or the fruits, instrumentalities or evidence of criminal conduct. Maine has rejected this rationale. State v. Richards, Me., 296 A.2d 129 (1972).

In Maine, State v. Estabrook, Me., 241 A.2d 880 (1968) (which will be discussed more fully, infra) proceeded on the principle that a search of the person of the defendant subsequent to arrest but in anticipation of an incarcerative detention lawfully to be imposed pending disposition of the criminal charge—the police custody of defendant hav-

ing continued without interruption from the time of arrest—is justifiable as "incident" to lawful arrest. Also, e. g.: Commonwealth v. Bowlen, 351 Mass. 655, 223 N.E.2d 391 (1967); United States v. Frankenberry, 387 F.2d 337 (2nd Cir. 1967).

Other jurisdictions hold such pre-incarceration search of defendant's person justified by independent considerations deriving from the reasons uniquely applicable to a forthcoming lawful incarceration of defendant—i. e., the protection of the security of the confinement area and of the defendant, as a person incarcerated, as well as the integrity of the police in the discharge of the various administrative duties arising when a defendant is to be confined for detention. e. g.: United States v. Mills, 153 U.S.App.D.C. 156, 472 F.2d 1231 (1972); State v. Stevens, 26 Wis.2d 451, 132 N.W.2d 502 (1965).

arate examination of the contents of the wallet by which he came upon the ball of tinfoil and (2) then "unravelled" the ball of tinfoil thereby making visible the crushed orange pill forthwith seized in the belief it was contraband.

■ As mentioned in footnote 3, ante, this Court decided in State v. Estabrook, Me., 241 A.2d 880 (1968) that when a defendant is lawfully arrested on a charge of crime and is transported to a jail at which, without interruption of the police custody, he is ultimately confined for detention pending disposition of the criminal charge, a search of defendant's person conducted prior to such incarcerative detention—notwithstanding that the police station search occurs

"some hour and thirty-seven minutes after the arrest" (*Estabrook* at p. 881)

—is justified as a search "incident" to the lawful custodial arrest. The further question presently before us was not reached in *Estabrook* since, there, the money alleged to have been unlawfully seized was found during the search of defendant's person without need that any container, or its contents, be separately explored to bring the money into view.

Yet, on the *Estabrook* justification of the stationhouse search of defendant's person as a search "incident" to lawful custodial arrest, two recent decisions of the Supreme Court of the United States, United States v. Robinson, —— U.S. ——, 94 S. Ct. 467, 38 L.Ed.2d 427 (1973), and Gustafson v. State of Florida, —— U.S. ——, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), mandate that the issue now being raised by defendant be decided against him.

*Robinson* and *Gustafson* establish two principles as controlling under the Constitution of the United States.

The first is that

"a search incident to . . . [lawful] arrest requires no additional justification . . . ." (United States v. Robinson, —— U.S. ——, 94 S.Ct. 469)

and, therefore,

". . . in the case of a lawful custodial arrest a *full* search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment . . . ." (emphasis supplied) (United States v. Robinson, —— U.S. ——, 94 S.Ct. 477).

The second critical aspect of *Robinson* and *Gustafson* is their categorical denial of the proposition that once effects, in the form of containers, have been removed from the defendant's person and control, the subsequent opening of the containers and examination of their contents is a separate and independent search of property which requires separate and independent Fourth-Fourteenth Amendment justification. Mr. Justice Marshall, on behalf of himself and two other Justices dissenting in *Robinson* and *Gustafson,* had strongly asserted, and extensively analyzed, the affirmative of the proposition—summarized by Mr. Justice Marshall as follows:

"[the search] . . . did not merely involve a search of respondent's person. It also included a separate search of effects found on his person. And even were we to assume, *arguendo,* that it was reasonable . . . to remove the object . . . felt in respondent's pocket, clearly there was no justification consistent with the Fourth Amendment which would authorize . . . opening the package and looking inside." (United States v. Robinson, —— U.S. ——, 94 S.Ct. 486)

To this contention of the dissenting Justices, precisely the position which defendant advances in the case at bar, the majority in *Robinson* and *Gustafson* answered, and decided, that if

". . . in the course of a lawful search . . . [of the person incident to lawful custodial arrest]" (United

States v. Robinson, —— U.S. ——, 94 S. Ct. 477)

the searching officer should "come upon" effects on the person

"he . . . [is] entitled to inspect . . . [them]; and when his inspection [has] revealed . . . ." (United States v. Robinson, —— U.S. ——, 94 S. Ct. 477)

a drug, not immediately identifiable but

" . . . believed to contain an unlawful substance" (Gustafson v. State of Florida, —— U.S. ——, 94 S.Ct. 488, 492),

the officer is

" . . . entitled to seize . . . [it] as 'fruits, instrumentalities or contraband' probative of criminal conduct." (Gustafson v. State of Florida, —— U.S. ——, 94 S.Ct. 492)

■ Thus, on the *Estabrook* "incident" to custodial arrest approach to authorize the full search of defendant's person in the case at bar *Robinson* and *Gustafson* squarely compel the conclusion that here, the exploration of the contents of the wallet found on defendant's person and the unravelling of the ball of tinfoil discovered inside the wallet were, even if lacking in independent "probable cause" justification, consistent with the protections guaranteed defendant by the federal Fourth-Fourteenth Amendments.

It may be thought, however, that *Estabrook* unreasonably stretches the "incident to arrest" concept by extending it to incarcerative detention situations; and that searches conducted in anticipation of such confinement of defendant are more properly to be justified on other grounds dictated by the forthcoming incarceration rather than the already completed arrest—i. e., the legitimate governmental interests in protecting the security of the confinement area, the safety of the defendant once confined and the integrity of the police administrative handling of the personal belongings of defendant while he remains incarcerated.

Even so, *Robinson* and *Gustafson* require rejection of defendant's contentions in the case at bar.

The ultimate theoretical foundation of *Robinson* and *Gustafson* is the existence of the right of governmental officials to assert, and effectively maintain, a custodial control of defendant's person. Given such right as continuingly operative, *Robinson* and *Gustafson* hold: (1) the lawful governmental authority to take, and effectively maintain, custodial control of defendant's person is itself the "reasonable" intrusion permissible under the Fourth-Fourteenth Amendments by virtue of which—absent extrinsically operative

" . . . extreme or patently abusive characteristics which . . . [might be] held to violate the Due Process Clause of the Fourteenth Amendment [as] in Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) . . . ." (United States v. Robinson, —— U.S. ——, 94 S.Ct. 477)—

" . . . a *full* search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment" (emphasis supplied) (United States v. Robinson, —— U.S. ——, 94 S.Ct. 477);

(2) accordingly, whenever

"in the course of . . . [such] lawful search . . . ." (United States v. Robinson, —— U.S. ——, 94 S.Ct. 477)

of the person of defendant the searching officer should "come upon" effects on the person of the defendant—notwithstanding that he has removed them from defendant's person and control—the officer is entitled to inspect them and to seize, as believed to be (or contain) an unlawful substance, an unidentified drug revealed by such examination.

The precedentially controlling impact of *Robinson* and *Gustafson* upon the case at bar, then is: (1) since the wallet was found during a full search of defendant's person, such search being itself consistent with Fourth-Fourteenth Amendment guarantees because it was reasonably necessary to the effectuation, and maintenance, of a lawful incarceration of defendant, (2) no violation of Fourth-Fourteenth Amendment protections came into being solely because the wallet had been removed from defendant's control before it was opened and the ball of tinfoil found inside it "unravelled", thereby disclosing the otherwise invisible crushed orange pill, and (3) hence, once the pill had thus been lawfully exposed to plain view, the officer was entitled to seize it as believed to be (or contain) contraband.

Defendant's motion to suppress as evidence against him the crushed orange pill, as claimed by the State to be "d-lysergic acid diethylamide (LDS–25)", must be denied.

The entry is:

Case remanded to the Superior Court for entry of an Order denying defendant's motion to suppress; and for further appropriate proceedings.

All Justices concurring.

WEBBER, J., sat at argument but retired before the decision was rendered.

WEATHERBEE, J., did not sit.

POMEROY, Justice (concurring).

I concur with the majority opinion in this case.

I agree that in the posture in which this case is before us the result is compelled by the December 11, 1973, decisions of the Supreme Court of the United States in United States v. Robinson, —— U.S. ——, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and Gustafson v. Florida, —— U.S. ——, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).

Lest a casual reader might draw unwarranted conclusions from this opinion and from the majority opinion in *Gustafson,* I desire to restate for emphasis that which is clearly stated in the majority opinion in this case and which is readily apparent from a careful reading of *Robinson* and *Gustafson.*

In this case:

(a) the defendant does not dispute that his incarceration was lawful;

(b) in this case defendant's claim of illegality is predicated entirely upon asserted violations of the Fourth Amendment as binding on the states by incorporation into the Fourteenth Amendment of the Constitution of the United States.

The majority opinion does not suggest, nor should it, what position we would take if the claim of illegality was predicated on the provisions of Sec. 5, Art. I, of the Constitution of Maine.[1]

I would also emphasize that in *Gustafson,* although the defendant was taken into custody for the offense of driving his automobile without a valid operator's license, the defendant conceded the constitutional validity of his custodial arrest and thus removed the issue from the case.

1. It should be pointed out as we said in State v. Stone, Me., 294 A.2d 683, 693, fn. 15:
 "Prior to being constitutionally obliged by *Mapp* [Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081] and *Ker* [Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726], supra, to follow an exclusionary rule for evidence acquired by Fourth Amendment violations, Maine had declined to provide such sanction". See: State v. Schoppe, 113 Me. 10, 92 A. 867 (1915).
 If a claim of illegality was asserted under the provisions of the Maine Constitution, a reexamination of State v. Schoppe, supra, would be required.

(See concurring opinion, Mr. Justice Stewart.)

I finally emphasize that in *Robinson,* the Court in footnote 2 took pains to point out that the standard operating procedures of the Metropolitan Police Department required a full custody arrest in the circumstances there described.[2]

2. Contra see Standard 4.2, National Advisory Commission on Criminal Justice Standards and Goals; Standard 2.2, American Bar Association Standards relating to Pretrial Release. See also Glassman, Maine Practice, Sec. 4.1, p. 26, fn. 17.