STATE of Maine

v.

Frederick J. DUBAY.

Supreme Judicial Court of Maine.

May 19, 1975.

David M. Cox, County Atty., Bangor, for plaintiff.

Paine, Lynch, & Weatherbee, by Peter M. Weatherbee, Bangor, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

The defendant, Frederick J. Dubay, was indicted for illegal possession of d-lysergic acid diethylamide (LSD–25) in contravention of 22 M.R.S.A. § 2212–B. Pursuant to M.R.Crim.P., Rule 37A, the presiding Justice below reported for determination by the Law Court the issue of the legality of the search of the defendant's personal belongings prior to his lawful incarceration.[1] Dubay contends that the search and seizure of the contents of his wallet are forbidden by Article I, § 5 of the Maine Constitution.[2]

---

1. The legality of the initial arrest is not before us since the agreed statement of facts, submitted as part of the record in this case, clearly states that the defendant was "validly arrested."

2. "The people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without a special

Previously, the defendant challenged the instant search as violating federal constitutional principles. That claim was resolved against him in State v. Dubay, 313 A.2d 908 (Me.1974). Since the facts surrounding the search in question were fully discussed and analyzed in that opinion, we do not deem it necessary to reiterate them.

■ It is unquestioned, as the defendant concedes,[3] that the police may conduct a warrantless, pre-incarceration search of the person of one who has been validly arrested.[4] Such a search is reasonable in view of the

"legitimate governmental interests in protecting the security of the confinement area, the safety of the defendant once confined and the integrity of the police administrative handling of the personal belongings of defendant while he remains incarcerated."

State v. Dubay, 313 A.2d 908, 911 (Me. 1974); *see also* Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); United States v. Pennington, 441 F.2d 249 (5th Cir. 1971), cert. denied, 404 U.S. 854, 92 S.Ct. 97, 30 L.Ed.2d 94 (1971); Smith v. State, 1 Md.App. 297, 229 A.2d 723 (1967). However, the defendant claims that the State's interest was achieved once the wallet was removed from his person, and that, therefore, there was no need to examine the contents of the wallet or the tin foil packet found therein.

We do not find this argument persuasive. The packet could have contained, for instance, a small gem or a plastic explosive. If such were the case, removal of the wallet only, without an investigation of its contents, would not adequately protect the jailer and inmates from dangerous substances, the contents of the defendant's wallet from theft by an unscrupulous police officer or the police from a false claim of theft of those contents. Thus, weighing the defendant's right to be secure in his possessions against the interests sought to be advanced by the State, we hold that the search complained of does not offend Article I, § 5 of the Maine Constitution.[5] Other jurisdictions have found similar pre-incarceration searches constitutional. State v. Woodall, 16 Ohio Misc. 226, 241 N.E.2d 755 (1968); State v. Stevens, 26 Wis.2d 451, 132 N.W.2d 502 (1965).

The defendant in his brief also questions which party bears the burden of persuasion when a hearing is held pursuant to the filing of a motion to suppress evidence (M.R.Crim.P., Rule 41(e)). This issue is not properly before this Court in that the lower Court has not reported this question for our decision. M.R.Crim.P., Rule 37A.

Since the issue reported was whether the tin foil packet should be suppressed, and since we have held it to be admissible in evidence, the entry is:

Remanded to the Superior Court for further proceedings.

---

designation of the place to be searched, and the person or thing to be seized, nor without probable cause—supported by oath or affirmation." Me.Const. art. I, § 5.

3. In his brief, the defendant admits that the police were justified in conducting a search of his person prior to his incarceration in order to check for and remove from his person and control items which might be used to introduce contraband into the prison or to aid in escape. *See* State v. Dubay, 313 A.2d 908 (Me.1974).

4. Such a procedure is modern police practice. *See* Charles v. United States, 278 F.2d 386, n. 2 at 389 (9th Cir. 1960).

5. Since we have characterized the search as one prior to incarceration, it is not necessary to decide whether Article I, § 5, would permit a search, conducted incident to a valid arrest, which is as broad in scope as those approved in United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) and Gustafson v. State of Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).

WEATHERBEE, J., did not sit.

DUFRESNE, C. J., concurring.

POMEROY, Justice (concurring).

I concur in the result reached in this case.

Because of certain observations I made in a concurring opinion when this matter first came before the Court (State v. Dubay, Me., 313 A.2d 908 (1974)), I feel constrained to explain my willingness to join the result reached in this case.

Before us in the first *Dubay* was the question whether or not the search made by the officers offended the Fourth Amendment of the Constitution of the United States as made applicable to the States by the Fourteenth Amendment.

In my concurring opinion I said, among other things,

"The majority does not suggest, nor should it, what position we would take if the claim of illegality was predicated on the provisions of Sec. 5, Art. I, of the Constitution of Maine."

Up to now there appears to have been no occasion when the standards prescribed by the Supreme Court of the United States with reference to the Fourth Amendment to the Constitution of the United States were not considered to be sufficiently high to meet our view of the minimum standards necessary to satisfy the requirements of Sec. 5, Art. I, of the Constitution of Maine.[1]

In at least one instance we did not hesitate to impose a standard under our own Constitution other than that described as the minimum standard necessary under a textually parallel provision of the Federal Constitution. State v. Collins, Me., 297 A. 2d 620 (1972). Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972),

prescribed a mandatory minimum standard as a Federal Fifth Amendment governing principle. The Court said the prosecution must bear the burden to establish at least by *"a preponderance of the evidence"* the voluntariness of a confession in order to meet the requirements of the Federal Constitution.

The Supreme Court in that case pointed out:

*"Of course, the States are free, pursuant to their own law, to adopt a higher standard. They may indeed differ as to the appropriate resolution of the values they find at stake."*

Thereafter in *Collins,* supra, this Court was concerned with the constitutional privilege against self-incrimination under our State Constitution.

We pointed out that this privilege, as a limitation on government, provides its own inherent evidentiary exclusionary doctrine predicated upon voluntariness.

We then affixed a *higher* standard under our Constitution than that required as the *minimum* under the Federal Constitution in that we held the prosecution must establish the legal admissibility of a confession *"by proof beyond a reasonable doubt."* We explained our action by saying:

"We decide, therefore, that to confirm and preserve the value reflected in the constitutional privilege against self-incrimination we must minimize the risks of allowing legal effectiveness to 'nonvoluntary', or *'involuntary'*, testimonial self-condemnation even at the expense of producing a loss of evidence which might have probative value; such was the price that our society had chosen to pay when it conferred constitutional protection upon the privilege against self-incrimination."

---

1. Because this is so there has been no occasion for us to reexamine State v. Schoppe,

113 Me. 10, 92 A. 867 (1915). No such occasion exists in the case now before us.

The issue becomes, is this case one in which we should impose our own standard and declare the search in this case in violation of Sec. 5, Art. I, of the Constitution of Maine?

I am satisfied in the factual framework now before us, application of the same standard as to the Fourth Amendment of the Federal Constitution will not do violence to what I view to be the attitude this Court ought to take when testing the search under the provisions of Sec. 5, Art. I, Constitution of Maine.

The majority opinion seems to find it necessary to justify the search of the pocketbook taken from the defendant's person by the need to protect the officer from dangerous untoward happenings and to protect against the possibility of theft or claims of theft of the defendant's wallet after it came into the possession of the police. I say this because the opinion says in part:

> "The packet could have contained, for instance, a small gem or a plastic explosive. If such were the case, removal of the wallet only, without an investigation of its contents, would not adequately protect the jailer and inmates from dangerous substances, and the content of the defendant's wallet from theft by an unscrupulous police officer or the police from a false claim of theft of those contents."

If justification beyond the valid arrest is necessary, I feel no such justification exists in this case.

I would prefer to accept what I understand to be the rationale of the Court in United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) and Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).

I understand from those decisions *there is no scope limitation on a search of the person incident to a valid arrest.*

Once the arrest is found to be valid there is no occasion to justify by other facts a full search of the person of the defendant, including a full search into things found on or in the pockets of the clothing worn by the defendant.

My understanding is that the majority of the Supreme Court in *Robinson-Gustafson* made a value judgment that there was greater virtue in treating all custodial arrests alike for the purpose of search justification than requiring there be litigated in each case the issue of whether or not there were present circumstances justifying a full search of the person and things found thereon, beyond a *Terry* type *"pat down."*

The majority opinion in those cases pointed out that the *validity of the custodial arrest* per se had traditionally been considered *sufficient justification* for unlimited, reasonable, (i. e., consistent with due process requirements), search of the person.[2]

Neither Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), nor any other case since Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), suggested there was or ought to be scope limitations on a warrantless search incidental to an arrest in order to make such search agreeable to the Fourth Amendment of the United States Constitution.

The reasons advanced in *Robinson* for justifying a full search of the person and things removed from the person without seeking for justification beyond the valid

---

**2.** Indeed Mr. Justice Stewart describes the rule as "settled constitutional doctrine." *Gustafson,* supra at 267, 94 S.Ct. 488 (concurring). T. Taylor, Two Studies in Constitutional Interpretation 44–45 (1969) in *Robinson,* supra, fn. 3, suggests there " . . . is little reason to doubt that search of an arrestee's person and premises is as old as the institution of arrest itself."

arrest, satisfies me we ought have no different rule under the provisions of Sec. 5, Art. I, of the Constitution of Maine.

The authority to search the person has its basis both in the need to disarm and to discover evidence. If we attempt to make the justification depend on what a Court may later decide was the probability in a particular case that weapons or evidence would in fact be found on the person of the suspect, we would be imposing a greater responsibility upon the officer than I think he ought to have.

As the *Robinson* Court pointed out:

*"A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search."* 414 U.S. at 235, 94 S.Ct. at 477.

The rule of *Robinson* is that

" . . . [a] *custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but it is also a* 'reasonable' *search under the Amendment."* 414 U.S. at 235, 94 S.Ct. at 477. (Emphasis supplied)

So far as our research reveals to date only one State (Hawaii) has rejected the reasoning of the majority of the Supreme Court Justices in *Robinson-Gustafson.* State v. Kaluna, Haw., 520 P.2d 51 (1974).

I see no compelling reason why Maine should become the second such State.

In the first *Dubay* I indicated my concern that approving custodial arrests for minor traffic violations, and using such custodial arrests as justification for full searches incident thereto, posed a danger both to due process rights and equal protection rights. This is so because officers might choose to make custodial arrests for minor traffic violations committed by persons of whose life style they disapprove (for example, persons with long hair or persons riding motorcycles and wearing leather jackets), but issue summonses for similar violations committed by persons of whose life style they approved.

That this was also the concern of the Justices of the United States Supreme Court in *Gustafson* is apparent from the concurring opinion of Mr. Justice Stewart in which it was pointed out that the then petitioner fully conceded the constitutional validity of his custodial arrest.

In the case now before us no such concern exists because *Dubay* was arrested for intoxication. It would seem unreasonable to argue that he ought not have been placed in custody.

This being so, as we said in the first *Dubay*

*"The ultimate theoretical foundation of Robinson and Gustafson is the existence of the right of governmental officials to assert, and effectively maintain, a custodial control of defendant's person. Given such right as continuingly operative, Robinson and Gustafson hold: (1) the lawful governmental authority to take, and effectively maintain, custodial control of defendant's person is itself the* 'reasonable' *intrusion permissible under the Fourth-Fourteenth Amendments by virtue of which—absent extrinsically operative*

" ' . . . extreme or patently abusive characteristics which . . . [might be] held to violate the Due Process Clause of the Fourteenth Amendment [as] in Rochin v. California, 342 U.S.

165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) . . .' (United States v. Robinson, 414 U.S. 236, 94 S.Ct. 477)—

" '. . . a *full* search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a *"reasonable"* search under that Amendment' (emphasis supplied) (United States v. Robinson, 414 U.S. 235, 94 S.Ct. 477) ; "

This same reasoning is also applicable under the Constitution of Maine.

WERNICK and DELAHANTY, JJ., join concurring opinion.