**STATE of Maine**

v.

**Philip LITTLE and Michael Brewer.**

Supreme Judicial Court of Maine.

Aug. 5, 1975.

Michael N. Westcott, Asst. Atty. Gen., Wiscasset, for plaintiff.

Fitzgerald, Donovan & Conley by Duane D. Fitzgerald, Mark L. Haley, Daniel R. Donovan, Hart & Stinson, P. A. by Carl W. Stinson, Ronald A. Hart, Bath, for defendants.

Before DuFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

On two occasions in the early morning hours of February 24, 1974 a motor vehicle passed the house of Sergeant Streng of the Boothbay Harbor Police Department. With each pass gunfire erupted from the vehicle, once from a shotgun and the second time from a .22 calibre pistol. Several hours later defendants Philip Little and Michael Brewer were arrested as the culprits.

They were separately indicted in the Superior Court (Lincoln County) on April 3, 1974. Each indictment charged two counts of "armed assault" upon Robert Streng in violation of 17 M.R.S.A. § 201–A:—one count alleging that the weapon involved was a 12 gauge shotgun and the other that it was a .22 calibre pistol.

The cases were consolidated for trial before a jury, and an 8 day trial began on April 22, 1974. During the trial each defendant moved for the suppression as evidence against him of weapons and shells (as more extensively discussed infra). Each motion to suppress was denied in all particulars.

At the conclusion of all the evidence the presiding Justice ordered a judgment of acquittal as to the first count of each indictment (assault while armed with a shotgun). Each defendant was found guilty by the jury of the second count (assault while armed with a .22 calibre pistol).

From the judgment of conviction entered on the jury's verdict each defendant has appealed. The appeals were consolidated for presentation to this Court. We deny each appeal.

The jury in adjudicating the guilt of defendants, and the presiding Justice in denying the motions to suppress, were warranted, respectively, in finding the following facts.

Sergeant Streng had gone to bed at approximately 1:45 a. m. on February 24, 1974. Soon, he heard a vehicle with an extremely loud exhaust go by his house proceeding northerly along Lakeside Drive in Boothbay Harbor. Minutes later, the Sergeant heard a vehicle with an extremely loud exhaust pass his house heading southerly. Coincident with this second pass there was a shotgun blast which destroyed the living room window of Streng's house.

At approximately 2:40 a. m. Sergeant Streng was engaged in making temporary repairs to his living room window. Numerous lights were on inside and outside

the house, and the living room door was open. Again, a vehicle with a loud exhaust passed the Streng house heading southerly. As the vehicle went by and Sergeant Streng, in an abundance of caution, had leaped behind a bush to find cover, numerous shots were fired from the vehicle towards the house. Sergeant Streng saw an old dark sedan disappearing down Lakeside Drive. Although he had not been able to make out any numbers on the license plate, Sergeant Streng ventured the thought to the police that the car might have been a 1962 black Chevrolet belonging to one Tommy Campbell with a license plate having 031 as the last digits.[1] Police cars cruising in the area were notified by radio of this information and also that the vehicle involved in the Streng attack had an extremely loud exhaust and was travelling south from the Streng residence. Within minutes a private citizen who had heard the dispatch on his police-band radio phoned the police station and reported that an old black sedan with a loud exhaust had just gone over the bridge to Southport Island. Police cruisers were immediately informed, and they then concentrated their search upon Southport Island.

Soon, officers observed freshly broken ice on the driveway of the residence of one Raymond Swett situated near the Southport bridge. Because of the rural nature of the area, the early hour of the morning and the general absence of traffic in the vicinity the police concluded that the vehicle shown by the freshly broken ice to have recently traversed the Swett driveway could well be the same as the one which had been involved in the Streng attack. The officers, therefore, placed the area of the Swett home under watch.

At approximately 3:55 a. m. a black 1960 Ford sedan with a loud exhaust drove out of the Swett driveway. The nearest police cruiser signalled it to halt. The sedan ignored the cruiser's flashing light and sped off towards the Southport bridge. It was ultimately brought to a stop by a police cruiser obstructing the road.

When the officers pursuing the Ford sedan came to the spot at which it was stopped, they approached the vehicle with guns drawn. They observed a shotgun in plain view on the front seat between the two occupants of the sedan. The occupants were then ordered out of the vehicle, and they complied with the order. They turned out to be the defendants, defendant Brewer having been the operator and defendant Little the front seat passenger.

The officers seized the shotgun on the front seat and some shotgun shells lying between the front seat and the front door on the passenger side. After these were examined, the officers made a custodial arrest of defendants.[2]

Thereafter, a routine pat-down of defendant Little disclosed an expended shotgun shell in his pocket. When defendants were taken to the police cruiser, a search of the person of defendant Little produced seven unexpended .22 calibre shells.

A search of the sedan revealed a .22 calibre pistol located under the passenger side of the front seat. Later, when defendants were being held in custody at the Lincoln County Sheriff's Office a search of the person of defendant Brewer yielded three unexpended .22 calibre shells.[3]

---

1. The police quickly eliminated the Campbell car as the "assault" vehicle. They visited the Campbell residence not long after the second shooting incident and examined the Campbell car. They found its engine cold and on this basis concluded that the Campbell vehicle had not been recently operated, and, therefore, could not have been the car involved in the assault on Streng.

2. The evidence is clear that at least one defendant was placed in handcuffs but leaves uncertain whether the second was handcuffed.

3. After the presiding Justice had ordered judgment of acquittal on the first count of each indictment, the State, with the agreement of defendants, withdrew from evidence the shotgun, a ward to be used with the

While the sedan was being detained at a local garage to which the police had removed it, a .22 calibre shell was observed caught on a strip of chrome on the outisde of the sedan.

Other .22 calibre casings and expended shells were subsequently found outside the Streng house.

*1*

Defendants predicate their arguments attacking the denials of the motions to suppress on alleged violations of the Fourth-Fourteenth Amendments to the Constitution of the United States. Each defendant contends that the presiding Justice erred in allowing into evidence the .22 calibre handgun found in the search under the seat of the sedan. In addition, defendant Brewer contests the correctness of the rulings admitting into evidence the various .22 calibre shells.

■ Patently without merit are the claims that there were violations of constitutional protections against warrantless searches in the discovery of the .22 calibre casings and the expended shells found near the Streng house and the .22 calibre shell discovered caught in the chrome strip on the outside of the sedan. These were in plain view, come upon without need for "search."

■ More extended discussion is necessary to refute defendant Brewer's claim that the warrantless search of his person at the police cruiser which brought to light the seven unexpended .22 calibre shells was an unconstitutional search.

When they were trying to, and did, stop the sedan, the police knew that (1) there had been two shooting incidents at the Streng house, (2) an old dark sedan with a loud exhaust was involved in them, (3) such a car had passed over the Southport bridge onto rural Southport Island, (4) the sedan which the police had come upon and were stopping had a loud exhaust, and (5) that sedan had emerged in the early hours of the morning from a driveway on rural Southport Island, near the Southport bridge, a driveway which, according to physical indicia, had at a recently prior time been traversed by a motor vehicle. These circumstances, in combination with the attempted flight of the sedan and the observed presence of a shotgun lying in plain view on the front seat of the vehicle between the occupants, gave the officers probable cause to believe that the sedan and its occupants had been involved in the felonious assault on Streng.[4]

Given such probable cause, the police acted lawfully in making an immediate custodial arrest of the defendants. The seven unexpended .22 calibre shells found on the person of defendant Little came to light during a search of Little's person conducted as an incident of this valid custodial arrest, and were, therefore, admissible as evidence under *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L. Ed.2d 427 (1973); *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); *State v. Dubay,* Me., 338 A.2d 797 (1975).

shotgun and various shotgun shells. Whether the presiding Justice was wrong in admitting these articles into evidence, as an issue also raised on appeal, need not be decided since it had become moot before the appeals of defendants were taken.

4. *State v. Heald*, Me., 314 A.2d 820 (1973) is closely analogous to the case at bar. In *Heald* probable cause was derived primarily from the existence of tire tracks in the snow in a rural area in the early morning hours.

In the present situation the features of the loud exhaust and the tire indentations in the ice of the Swett driveway from which the suspect sedan had emerged have special identifying cogency which, together with all of the other factors pointing to the sedan as the vehicle involved in the Streng attack, gave the police probable cause to believe that the sedan was the instrumentality and its occupants the perpetrators of the assault on Streng.

The rationale of these same cases also establishes the admissibility of the three unexpended .22 calibre shells uncovered by the search of the person of defendant Brewer conducted while he was being held in custody at the Lincoln County Sheriff's Office. *State v. Dubay*, Me., 313 A.2d 908 (1974).

There remains for consideration the admissibility of the .22 calibre pistol found under the passenger seat of the sedan. Because, as shown above, the officers had probable cause to believe that the sedan was the vehicle used in the felonious attack on Streng, the legal validity of the on-the-spot warrantless search of the vehicle as an instrumentality of the felony is settled by *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

In *Chambers v. Maroney*, the police, acting with probable cause, stopped a motor vehicle on the highway, made a custodial arrest of the vehicle's occupants and then seized the vehicle as an instrumentality of the crime. At issue in *Chambers v. Maroney* was a warrantless search of the vehicle conducted after the vehicle had been removed to the police station. To justify this search as constitutional the Court held it to be the functional equivalent of the warrantless search of the vehicle which the police could lawfully have made while the vehicle was stopped on the highway—a warrantless search which *Chambers v. Maroney* recognized as constitutional, notwithstanding that the occupants of the vehicle may have been placed under police control before the search was undertaken, because an automobile stopped on the highway is a "fleeting target for a search." (p. 52, 90 S.Ct. 1975).

Thus, an essential part of the decision in *Chambers v. Maroney* is the principle that given probable cause to believe that a motor vehicle has been an instrumentality in the commission of a felony, the police are entitled to conduct an immediate on-the-spot warrantless search of the vehicle for additional evidence independently of whether the occupants are, or are not, in police custody. The rationale is:

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." (pp. 51, 52 of 399 U.S., p. 1981, of 90 S.Ct.) [5]

In the case at bar since the police had probable cause to believe that the sedan was itself an instrumentality of the felonious assault on Streng and as such likely to contain other evidence of the felony, under *Chambers v. Maroney* the police were justified in making an immediate on-the-spot, warrantless search of the vehicle.

The presiding Justice ruled correctly in refusing to suppress the .22 calibre pistol

---

5. Defendants argue that *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) indicates that the Supreme Court of the United States has receded from this aspect of the decision in *Chambers v. Maroney*. The contention is erroneous. Justice Stewart in his opinion in *Coolidge* explicitly distinguished *Chambers v. Maroney* saying:

". . . it seems abundantly clear that there is a significant constitutional difference between stopping, seizing, and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose." (n. 20 at p. 463, 91 S.Ct. at p. 2036)

found under the front seat of the sedan during the search of the vehicle conducted while it was still on the highway.

2

■ Defendant Brewer asserts on appeal that the presiding Justice was guilty of errors of omission and commission in his charge to the jury.

He claims, first, that the presiding Justice erred in refusing to give his requested instruction that:

"In a criminal case a verdict of guilty may not be based upon circumstantial evidence unless the proven circumstances are not only consistent with the conclusion that the Defendants are guilty, but are inconsistent with any other reasonable conclusion."

Instead, the presiding Justice charged:

"No matter upon what evidence they [the State] are relying, their burden of proof remains the same. They must satisfy you beyond a reasonable doubt . . . ."

In declining to charge as requested and instructing as he did, the presiding Justice did not commit error but, indeed, avoided error. As we have previously clarified in *State v. Tomer*, Me., 304 A.2d 80 (1973) and *State v. Pike*, Me., 306 A.2d 145 (1973), the "negative exclusion" instruction here requested by defendant is unacceptable because it wrongly suggests to the jury that circumstantial evidence is subject to a more rigorous standard of proof than direct evidence. The presiding Justice therefore, properly refused the instruction and accurately stated the law in the instruction he did give:—that whether the evidence relied upon by the State to establish guilt is circumstantial or direct, there is a single standard of proof, that guilt be proved beyond a reasonable doubt.

■ Defendant Brewer otherwise challenges the charge in the respect that the jury was told:

"If you should find beyond a reasonable doubt that the defendants acted in a reckless or wanton manner, disregarding the safety of others, and that as a natural and probable consequence of said acts bodily injury could result, then you may find, if all . . . other elements are present, the necessary intent."

Defendant maintains that proof of reckless or wanton acts is insufficient to sustain a finding of the "intent" element essential to the crime of assault.

Recent decisions of this Court have settled this issue contrary to defendant's position. *State v. Worrey*, Me., 322 A.2d 73 (1974); *State v. Anania*, Me., 340 A.2d 207 (1975) and *State v. Bowden*, Me., 342 A.2d 281 (1975). In these cases we clarified that assault is not a "specific intent" crime in the sense that defendant must have an actual subjective state of mind to cause bodily harm to the victim. The subjective "intent" necessary is an intention of defendant to do the act which he does. With such "intent" present, whether an assault has been committed depends thereafter upon an evaluation of objective circumstances, namely, whether the act done has objective potential to produce bodily harm.

This was precisely the substance of the instruction given by the presiding Justice; it was a correct statement of the law of this State.

3

■ Each defendant contends as a last point on appeal that the presiding Justice erred in refusing to grant his motion, filed at the conclusion of all of the evidence, for judgment of acquittal as to count two of the indictment against him (assault while armed with a .22 calibre pistol).

We reject the claims.

We have held, ante, that the .22 calibre pistol and the various .22 calibre shells, expended and unexpended, were admissible as evidence against defendants.

The jury thus had before it, as properly admitted, evidence showing the following. In the early hours of the morning and in a rural area with traffic practically non-existent, defendants were riding in a vehicle strikingly similar to that involved in the recent early morning hour assault upon Streng. The .22 calibre pistol found under the front seat of this vehicle was directly linked by the testimony of the experts to expended shells and cartridges found at the site of the assault. Each defendant had on his person unexpended .22 calibre bullets shown by expert ballistics testimony to be capable of being fired from the .22 calibre pistol in the vehicle.

These special circumstances combined with all the other circumstances shown by the evidence provided probative force sufficient to support the verdict of the jury that defendants were guilty of the assault with a .22 calibre pistol upon Sergeant Streng.

The entry is:

*Appeals denied.*

All Justices concurring.