**STATE of Maine**

v.

**Vincent PARIS.**

Supreme Judicial Court of Maine.

Aug. 21, 1975.

Roland A. Cole, County Atty., William S. Brodrick, Asst. County Atty., Alfred, Stephen P. Lagoy, Intern, for plaintiff.

Willard, Hanscom & Nickerson, by Ronald D. Bourque, Roger P. Flaherty, Sanford, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

On August 9, 1973 defendant Vincent Paris was found by a trooper of the Maine State Police to be operating a motorcycle in violation of law in that: (1) defendant lacked a proper license to operate, and (2) the motorcycle had an inadequate exhaust system. The officer thereupon made an arrest of the defendant and elected to take the defendant into custody. Incident to such custodial arrest, the trooper ordered defendant to empty his pockets and place the contents on the hood of the State Police cruiser. He then subjected defendant to a "pat down" during which he felt a

small hard object in the right front pocket of defendant's pants. Believing it to be a weapon, the officer removed the object from the pocket and saw that it was a plastic cylindrical container. He opened the container and observed in it pink tablets in three glassine-type bags, which he seized. Subsequent chemical analysis established that the tablets were phencyclidine, an hallucinogenic drug.

On September 5, 1973 an indictment was returned against defendant in the Superior Court (York County) charging him with possession of phencyclidine in violation of 22 M.R.S.A. § 2212–B. Defendant was arraigned and entered a plea of not guilty. Subsequently, on April 1, 1974, defendant filed a motion to have suppressed as evidence against him

"a substance alleged to be phencyclidine . . . found in . . . [defendant's] wallet"

during a

"warrantless search, incident to the arrest, [of defendant]."

The motion made no reference to any violation of the Constitution of the United States. Illegality was asserted only by reference to Article I, Section 5 of the Constitution of Maine as rendering the search illegal because it

" . . . went beyond the permissible scope of a search incident to arrest . . . ."

Moreover, the motion to suppress raised no issue as to whether the trooper, even though he may have had a right to arrest, acted unlawfully in making the arrest *custodial*.

A Superior Court Justice heard the motion to suppress and denied it. The Justice concluded that there was no "unreasonable search and seizure . . . [violative of] Article One, Section Five of the Maine Constitution."

Upon motion of the defendant filed pursuant to Rule 37A(b) the presiding Justice, believing that his decision concerned questions which

" . . . are of substantive importance and merit and require immediate review by the Law Court . . . .",

ordered the case

"reported to the Law Court . . . for an interlocutory ruling on the issues of law raised in Defendant's motion to suppress."

■ Since the interlocutory report thus confines the issues to be decided by the Law Court to those raised by defendant's motion to suppress and said motion made no attack on the legality of the arrest as a *custodial* arrest, we are called upon to decide only whether this Court, in interpreting Article I, Section 5 of the Constitution of Maine, will deviate from the United States Supreme Court's interpretations of the federal Constitution as embodied in *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) and *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). Specifically, we are called upon to decide whether Article I, Section 5 of the Maine Constitution requires that scope limitations be imposed upon warrantless searches made incident to valid custodial arrests.[1]

---

1. The brief of defendant mentions particular circumstances testified to by the arresting officer leading to his decision to make the arrest in this instance a custodial arrest. Defendant, however, adverts to these facts not to support a claim that the arrest, because made custodial, was thereby illegal but rather only to illustrate the "potential discriminatory abuse the holding[s] . . . [of *Robinson*

and *Gustafson*] could lead to"—thus to seek to induce this Court to decline to read the *Robinson-Gustafson* federal doctrine into Article I, Section 5 of the Constitution of Maine.

Even were we to treat defendant's brief as seeking to raise the issue that the arrest of defendant became an illegal arrest because the circumstances did not justify making it a custodial arrest, we may not, in further-

With the issue thus defined, this case is now precedentially controlled by *State v. Dubay,* Me., 338 A.2d 797 (1975) holding that a warrantless search conducted incident to a legally valid custodial arrest will be evaluated under Article I, Section 5 of the Constitution of Maine in accordance with the principles of *United States v. Robinson* and *Gustafson v. Florida.* By this standard, as explicitly delineated by the majority in *State v. Dubay,* supra,

"there is no scope limitation on a search of the person incident to a valid arrest" (p. 800)

because

". . . the validity of the custodial arrest per se . . ." (p. 800)

provides the "sufficient justification" for "unlimited, . . . search of the person" (subject only to general "due process" requirements). (p. 800)

The entry is:

*The Superior Court's ruling denying defendant's motion to suppress is sustained.*

*Case remanded to the Superior Court for further proceedings.*

DUFRESNE, C. J., and POMEROY, DELAHANTY and WERNICK, JJ., concurring.

ARCHIBALD, J., concurring opinion, WEATHERBEE, J., joining in separate concurring opinion.

ARCHIBALD, Justice (concurring).

I concur with the result reached by the majority opinion. However, I adhere to my position in *State v. Dubay,* 338 A.2d 797 (Me.1975), and would not base my

conclusion on the premise that, given a "warrantless search [of a person] conducted incident to a legally valid custodial arrest," Article 1, Section 5 of the Constitution of Maine imposes no scope limitation on such a search. In my judgment the facts here do not require us to decide whether the rationale of *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467 (1973), and *Gustafson v. State of Florida,* 414 U.S. 260, 94 S.Ct. 488 (1973), should control our interpretation of Article 1, Section 5.

To make my position clear I feel I should summarize the facts as I glean them from the record.

Prior to any search of the appellant's person, the officer had placed him under arrest for two motor vehicle violations, both of which were misdemeanors. Consistent with established police practice, the officer had concluded to take Paris into physical custody and thus assured his ultimate appearance in court. The officer, being alone, would necessarily have to transport Paris to the closest place of detention. Again acting pursuant to standard police practice, he sought to ascertain whether Paris had any weapon on his person and ordered him to remove the contents of his pockets and place them on the hood of the police vehicle. When this was done the officer then "patted him down," and he detected a long, hard object in his right hand pants pocket and believed it to be a jackknife. Remembering that Paris had not voluntarily removed this object when ordered to do so and knowing that he was to return the various items which were inoffensive, the officer then took the tube from the pocket, discovering that it was a plastic gum container on which there was a cap. Believing that this plastic container might contain such things as razor blades, a small pistol, or sulphuric

---

ance of a sound appellate practice, here take cognizance of the contention. Defendant had failed to raise this issue in his motion to suppress. Hence, the question of the legality of the arrest, as taking a custodial form, has

not been reported to us for decision. The interlocutory report by which we have the case before us is confined to the issues raised in the motion to suppress.

acid, the officer testified that on removing the cap, "I looked inside of it" and "saw some tablets in the glasine [sic] bag." The tablets thus having been exposed to his view, the officer seized them in the belief that "it might be some type of illicit medicine." The officer testified that the sole purpose in conducting this search was "to satisfy myself that Mr. Paris did not have on his person any type of an object which he could do harm to myself or himself with."

An officer making a valid arrest has the right incident thereto to search for weapons. *State v. Heald*, 314 A.2d 820 (Me.1973).

But was the officer, having found the closed tube, authorized to remove the cap from the tube and expose for inspection its interior? Only by doing so could he determine whether it did contain a usable weapon.

In *State v. Stone*, 294 A.2d 683 (Me. 1972), where probable cause existed to believe that a misdemeanor was being committed and a rifle was removed from an automobile, because of the exigent circumstances then existing, we held it was proper to remove a clip from the rifle to determine if it contained shells, such search and seizure not being violative of Article 1, Section 5. Earlier we had pointed out that searches incident to valid arrests which were *reasonable* did not violate the Maine Constitution. *State v. Warner*, 237 A.2d 150 (Me.1967).

When the officer opened the tube, the contents of the glassine bag were visible

and it was reasonable under these circumstances for him to believe that the tablets were a contraband drug and thus subject to lawful seizure—even though this was not what the officer was looking for.[1]

"When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for."

*Abel v. United States*, 362 U.S. 217, 238, 80 S.Ct. 683, 697, 4 L.Ed.2d 668 (1960); *see Harris v. United States*, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).

"If the search is proper, it is of no moment that the object found was not what the officer was looking for, *Abel v. United States* [*supra*]."

*United States v. Edwards*, 498 F.2d 496, 500 (2d Cir. 1974); *see also State v. Elkins*, 245 Or. 279, 422 P.2d 250 (1966).

In summary, I feel that since Paris was in fact lawfully arrested and was to be transported in the police vehicle, it was not only a proper but a necessary police function to make a complete search for weapons, as the officer here did. Under these entirely reasonable circumstances, Article 1, Section 5 does not prevent the introduction into evidence of the contents of the plastic tube. In my judgment we should reserve our opinion on whether we should apply the *Robinson* and *Gustafson* rationale to our interpretation of Article 1, Section 5, until appropriate facts compel it.

---

1. The officer, who had ten years of police experience, gave three reasons for this belief:
   (1) The pills were in a glassine bag which is quite frequently used in drug traffic.
   (2) The pills were not the type "one would carry in a gum container."
   (3) Certain of the pills "resembled some LSD that I had obtained not too long before that. They appeared to be of a homemade nature from a homemade pill press."