Thomas Ralph **FARESE**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 25343.

United States Court of Appeals,
Fifth Circuit.

April 20, 1970.

Alfred Paul Farese, Everett, Mass., for appellant.

J. V. Eskenazi, Asst. U.S. Atty., Miami, Fla., for appellee.

Before GOLDBERG, DYER and CARSWELL, Circuit Judges.

CARSWELL, Circuit Judge:

In appellant's jury trial on a charge of transporting in interstate commerce a forged and fraudulently made security and for aiding and abetting in that offense, a composite exhibit consisting of an attache case containing, among other objects, some clean and dirty shirts, was introduced into evidence by the government. The relevancy of this exhibit to the totality of the evidence is scarcely debatable, and its admissibility as a composite exhibit was not objected to at the trial. The problem here which requires our reversal of appellant's conviction arises from the fact that $750.00 in cash of large denominations was discovered by the jury upon their examination of one of the freshly laundered shirts inside the attache case after they had retired to the jury room for consideration of the case.

Two questions now present themselves for determination. First, was error committed when money, the existence of which was unknown to the court, to the government, or to the defense, was discovered by the jurors in a shirt that had been introduced in a composite exhibit? And second, if this be error did it prejudice the appellant so as to require reversal and a new trial?

This requires an examination of some of the historical prerequisites of a fair trial. It is a fundamental principle that the government has the burden of establishing guilt solely on the basis of evidence produced in the courtroom and under circumstances assuring the accused all the safeguards of a fair trial. Trial jurors have no right to investigate or acquire information relating to the case outside of that which is presented to them in the course of the trial in accordance with established trial procedure. Indeed, Mr. Justice Holmes expressed this concept over sixty years ago in the following language:

"The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, * * *." Patterson v. Colorado, 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879 (1907).

The Sixth Amendment guarantees that the accused shall enjoy the right to a trial by an impartial jury and shall be confronted with the witnesses and evidence against him. Certainly the definition of impartiality is not a static concept, but can be defined only in relation to specific facts and circumstances. Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). The most general interpretation of a fair trial is that it be conducted before unprejudiced jurors under the superintendence of a judge who instructs them

as to the law and advises them as to the facts. Judicial control of the juror's knowledge of the case pursuant to the laws of evidence is fundamental to the prevention of bias and prejudice. Our rules of evidence are designed to exclude from consideration by the jurors those facts and objects which may tend to prejudice or confuse. Evidence presented under the exclusionary rules is subject to cross-examination and rebuttal. It is therefore necessary that all evidence developed against an accused "come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." Turner v. Louisiana, 379 U.S. 466, 472–473, 85 S.Ct. 546, 550, 13 L.Ed.2d 424 (1965). Exposure to evidence through discovery of secreted material is not subject to these safeguards. In the case here, it cannot be said that appellant secured judicial protection of his constitutional rights when money, neither introduced nor properly received into evidence in open court, was discovered by the jurors in the confines of the jury room.

■■ Having determined that error did occur, we now turn to a determination of whether that error prejudiced appellant so as to require reversal. Before applying the circumstances of this particular case to the issue of prejudice, it is well to reiterate the well established rule that

> "an erroneous ruling which relates to the substantial rights of a party is ground for reversal unless it affirmatively appears from the whole record that it was not prejudicial." McCandless v. United States, 298 U.S. 342, 347–348, 56 S.Ct. 764, 766, 80 L.Ed. 1205 (1935).

and that the courts will not speculate as to the amount of prejudice arising from information secured by a jury outside the courtroom.

"The right to trial by jury comprehends a fair determination of the guilt or innocence of the accused free from bias, passion, or prejudice. * * * And where error occurs which, within the range of a reasonable possibility, may have affected the verdict of a jury, appellant is not required to explore the minds of the jurors in an effort to prove that it did in fact influence their verdict." Braswell v. United States, 200 F.2d 597, 602 (5th Cir., 1952).

"So to hold would, as a practical matter, take from a defendant his right to a fair trial." Little v. United States, 73 F.2d 861, 866 (10th Cir., 1934).

Our courts have traditionally upheld the position that verdicts should be set aside where it is shown that the impartiality of jurors may have been affected or where tainted material has come before the jury. Appellant admits that it is impossible to ascertain the effect that the money had upon the minds of the jurors in reaching their verdict. It is just this situation which demands reversal. An analysis of prior cases pertaining to incidents where out-of-court evidence reached the jurors convinces us that appellant in the present case was prejudicially denied his right to a fair trial.

Seventy-six years ago the Supreme Court held it to be reversible error when the trial judge allowed an entire book to go into the jury room without sealing off the pages not admitted into evidence, even though it was not shown that any of the jurors had actually read the inadmissible pages. Bates v. Preble, 151 U.S. 149, 14 S.Ct. 277, 38 L.Ed 106 (1893).

In Little v. United States, 73 F.2d 861 (10th Cir., 1934), it was held to be reversible error for the trial judge to allow the court stenographer to go into the jury room and read the instructions to the jury, where the record failed affirmatively to disclose that no prejudice resulted.[1]

---

1. Also see Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892) and Fillippon v. Albion Vein Slate Co.,

250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853 (1919).

After the jury had returned its verdict in the case of United States v. Dressler, 112 F.2d 972 (7th Cir., 1940), it was noticed that a fingerprint card of the defendant, which was unobjectionable to prove fingerprints, contained the accused's criminal history on the reverse side. This was held to be reversible error, as it was not possible to estimate what effect such material had on the jury.

United States v. Michener, 152 F.2d 880 (3rd Cir., 1945) concerned an incident where the trial judge admitted all of the accused's corporate records which were present in the courtroom, notwithstanding the fact that some of the records had neither been mentioned nor authenticated and related to contracts not in issue. The admission of the files *en masse* was held to be reversible error even though the court was unable to evaluate the effect which the records had on the jury's verdict.

In United States v. Brandenburg, 155 F.2d 110 (3rd Cir., 1946), the defendant was convicted of violations of the Harrison Narcotics Act. The appellate court held that the motion to set the verdict aside should have been granted when, among prescriptions placed in evidence by the government and sent out with the jury were three which were inadvertently admitted and attached to them were hearsay statements. "We are unable to evaluate what weight the jury attached to them * * *. Therefore a new trial must be had." Supra, p. 113.

Florida courts have held that it is error for a trial judge to permit the jury to have use of a dictionary while deliberating its verdict without first informing counsel in open court. Smith v. State of Florida, 95 So.2d 525 (Fla., 1957); Grissinger v. Griffin, 186 So.2d 58 (Fla.App., 1966).

In the case of Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), two deputy sheriffs who were the key witnesses for the prosecution were in "continuous and intimate" association with the jury during the three-day trial. Although there was no showing of direct prejudice and the deputies testified that there had been no conversation about the case itself, the Supreme Court held that "it would be blinking [at] reality not to recognize the extreme prejudice inherent in this * * * [situation]." Supra at 473, 85 S.Ct. at 550. Also see Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L. Ed.2d 420 (1966).[2]

It is the government's contention on this appeal, in spite of the rationale of the cases cited above, that the mere finding of money hidden in a shirt could in no way prejudice the appellant since the crime charged did not directly involve cash and since money itself has no character. While this argument might have some merit in a case where the accused is convicted of a crime having no connection with monetary gain, the contention fails where the crime involves forged securities. It cannot be said that there was no reasonable possibility that the discovery of $750.00 in cash affected the jury's verdict. This is especially so in light of the testimony adduced at the trial.

2. Cases in which adverse publicity has reached the jury, thereby necessitating a new trial, are legion. Some are cited here only to show that the same principles as noted in the cases cited in this opinion have long governed the determination of granting a new trial when the effect upon the jury of such publicity is uncertain, and when it is not tempered by protective procedures. See Patterson v. Colorado, 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879 (1907); Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940); Adams v. United States ex rel McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942), Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); United States v. Kum Seng Seo, 300 F.2d 623 (3rd Cir., 1962); Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L. Ed.2d 543 (1965); and Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L. Ed.2d 600 (1965).

A representative of the Travelers Express Company testified that two hundred money orders of a certain series never arrived at their place of destination and were unaccounted for. Two witnesses testified that they had had credit cards stolen from them and had motel and other bills charged to their accounts when they had never been to the places named and the signatures on the bills were not their own. Three witnesses testified to the effect that they had cashed money orders for appellant. In opening and closing statements to the jury, counsel for the government made numerous references to the proposition that appellant was involved in the passing of a number of "bogus" money orders in the Miami area, all of which were within the series of those money orders unaccounted for as testified to by the representative of the Travelers Express Company.

Under these circumstances, it can only be assayed what effect the discovery of the secreted cash may have had upon the jury. It takes no fanciful flight, however, to perceive the strong probability of prejudice to the defendant then on trial upon a charge involving unlawful monetary gain.

In Vicksburg & Meridian Railroad Co. v. O'Brien, 119 U.S. 99, 103, 7 S.Ct. 172, 174, 30 L.Ed. 299 (1866), the Supreme Court speaking through Mr. Justice Harlan, said:

> "While this court will not disturb a judgment for an error that did not operate to the substantial injury of the party against whom it was committed, it is well settled that a reversal will be directed unless it appears beyond doubt that the error complained of did not and could not have prejudiced the rights of the party."

Our system of law has continuously endeavored to prevent even the possibility of unfairness. See In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

The judgment of conviction appealed from is

Reversed.