STATE of Maine

v.

Edward J. McCARTHY, Jr.

Supreme Judicial Court of Maine.

April 22, 1976.

Frank F. Harding, Dist. Atty., Belfast, for plaintiff.

Richard M. Dostie, Belfast, for defendant.

Before DuFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

The defendant was indicted, tried in the Waldo County Superior Court before a jury and convicted of breaking, entering and larceny in the nighttime,[1] and has appealed.

We deny the appeal.

Appellant premises his appeal on three claims of error which we will consider in the sequence argued.

I

After the case had been submitted to the jury, the presiding Justice was handed this note from the foreman of the jury:

"Your Honor, was there supposed to be a pair of gloves in the box of evidence?"

The Justice advised counsel of the receipt of this note and a colloquy ensued during which the defendant was present. It was then agreed that the Justice respond as follows:

"Mr. Foreman, the answer to your inquiry, there was not a pair of gloves in the box of evidence, nor is there any testimony during the trial as to any gloves."[2]

Shortly after receiving this response the jury returned its guilty verdict. An examination of the box then revealed a "brown envelope containing a pair of brown woolen leather-faced gloves."

Appellant promptly filed a motion for a mistrial on which a hearing was held. In summary, it was established that, among other exhibits, these gloves were taken from the appellant at the County Jail shortly after he was arrested. They were placed in a sealed box kept secured by a clerk in the District Court until the exhibits were brought into the Superior Court for use in the defendant's trial.[3] When the other exhibits had been properly identified and admitted, they were put in a plastic bag, replaced in the same box and given to the jury when it retired to deliberate. No evidence was offered at trial which had any connection with the use, or non-use, of gloves.

After considering all of the evidence, the Court denied the motion for a mistrial, stating,

"this Court is satisfied that there was no prejudice to the defendant in this—this

---

1. 17 M.R.S.A. § 2103.

2. The procedure adopted by the Justice below fully conforms to the recent holding of the United States Supreme Court in *Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975).

3. The deputy clerk in the District Court was a witness and identified this box which was marked State's Exhibit 11. It was actually offered and admitted without objection. It is apparent that neither the prosecutor nor defense counsel knew the gloves were within this box at the time, despite the fact that both had ample opportunity to inspect it.

pair of gloves being in the box which went to the jury."

Appellant agrees that the granting of a motion for a mistrial is addressed to the sound discretion of a presiding Justice and will not be disturbed absent an abuse of that discretion. *State v. Hachey*, 278 A.2d 397 (Me.1971). We conceive the test to be applied to the ruling of the Justice below is whether, on these facts, there was a *reasonable possibility* that the inadvertent submission of the gloves to the jury might have been a contributing factor productive of the guilty verdict. *See Fahy v. State of Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

Appellant relies on *Bowers v. Coiner*, 309 F.Supp. 1064 (S.D.W.Va.1970), and *Farese v. United States*, 428 F.2d 178 (5th Cir. 1970).

The facts before us and those enumerated in *Bowers* and *Farese* are readily distinguishable.

In *Bowers* a gun had been excluded as an exhibit but, nevertheless, the prosecutor was permitted to refer to this gun in his argument and the presiding Justice allowed the gun to be taken into the jury room while the jury was deliberating. Since the use of a gun had a direct bearing on Bowers' guilt, it was clear that a reasonable possibility existed that the permitted use of excluded evidence might have contributed to the conviction and, therefore, it was held that allowing the gun in the jury room was error.

In *Farese* a briefcase containing the defendant's laundry was admitted and the jury discovered $750.00 in bills of large denomination in the pocket of a freshly laundered shirt. In sustaining an appeal, the Court noted:

> "It takes no fanciful flight, however, to perceive the strong probability of prejudice to the defendant then on trial upon a charge involving unlawful monetary gain."

In *Bowers* and *Farese* it is clear that the gun and the $750.00 bore such a nexus to other inculpatory testimony as to give the testimony additional probative value. In the instant case there was no such proven nexus between the gloves and the other facts. In short, the "reasonable possibility" test was met in both *Bowers* and *Farese* but is not met on the facts in this record. *United States by Staples*, 445 F.2d 863 (5th Cir. 1971), *cert. denied* 404 U.S. 1048, 92 S.Ct. 710, 30 L.Ed.2d 739; *see also United States v. Allison*, 481 F.2d 468 (5th Cir. 1973); *Paz v. United States*, 462 F.2d 740 (5th Cir. 1972).

This point of appeal is without merit.

## II

■ Appellant has argued that the police seizure of his boots at the County Jail was improper.

Shortly after midnight on April 27, 1974, the appellant was observed by a Belfast police officer who determined that he was intoxicated. After the appellant had refused an opportunity to be taken home and insisted on returning to a nearby tavern, the officer arrested him for being found intoxicated in a public place. Having done so, the officer searched the appellant and found a screwdriver concealed under his clothing, as well as a fairly large quantity of coins. The officer took possession of these items and transported the appellant to the County Jail where he was booked for public intoxication and possession of burglary tools. During this process his shoes were removed at the suggestion of the Chief of Police and given to another officer for the reason that "those were the type of heel mark that we had been looking for." The officer's attention had been attracted to these shoes because of the manner in which the appellant was sitting, with his "foot up."

At the time the boots were seized the officers were unaware that the criminal act alleged in the indictment had been committed. However, later in the morning this particular crime came to their attention and an investigation ensued. The locus of the crime was approximately two hundred yards from where the appellant had been arrested. On investigation of the crime scene two footprints were discovered which compared favorably with the shoes taken from the appellant.

If we understand appellant's position correctly, he is arguing that because the police had no knowledge of the alleged crime when the boots were seized, no probable cause existed for their seizure.

Appellant's position cannot be sustained.

At the time of the seizure the appellant was under lawful arrest and in police custody. Whether taking the boots be characterized as a pre-incarceration seizure or one made in conjunction with a lawful arrest is unimportant since in neither event does the seizure violate any State or federal constitutional sanctions. *State v. Dubay*, 313 A.2d 908 (Me.1974); *see also State v. Dubay*, 338 A.2d 797 (Me.1975).

We have held that fingerprinting a person in lawful custody for purposes of latent comparison is not constitutionally proscribed. *State v. Inman*, 301 A.2d 348 (Me.1973). We see no rational distinction between fingerprinting a lawfully arrested person and taking a pair of shoes from such a person, both acts being for purposes of latent comparison.

Additionally, the boots were in plain view. It is hardly necessary to cite authority for the proposition that property subject to seizure which falls within the plain view of police officers may be seized. *State v. Mosher*, 270 A.2d 451 (Me.1970).

The fact that the police were unaware of the criminal violation when the boots were seized is not controlling. Police action is not subject to rigid logistic standards but is allowed that degree of flexibility necessary to meet the reactions of suspects subject to police detention.

A case factually similar to the instant case was recently decided in Connecticut. Noting the suspicious conduct of certain individuals, the police apprehended them and credit cards bearing a given name, being in plain view, were seized by the police. *Thereafter* it was discovered that a robbery had been committed during which these credit cards had been stolen. Under the plain view doctrine announced in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Connecticut Court held that the credit cards thus seized were admissible in the robbery trial, even though the seizure was prior to any police knowledge of the crime. *State v. Watson*, 165 Conn. 577, 345 A.2d 532 (1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1977, 40 L.Ed.2d 311 (1974).

The boots were properly admitted in evidence.

### III

■ Appellant correctly preserved for appellate review the sufficiency of the evidence to support a conviction.

Appellant was arrested within two hundred yards of the structure broken into, having then in his possession a screwdriver and a particularly unique coin, both of which the owner of the building specifically identified. The appellant's footprints matched those found on the ground in close proximity to a window which had been broken for purposes of entry. Additionally, a large amount of coins, some loose and some in rolls, had been stolen and comparable amounts were found in the possession of the appellant. These facts clearly fall within the now well accepted

rule that when one is found in recent and exclusive possession of stolen goods, a jury operates permissibly by returning a guilty verdict. *State v. Gove,* 289 A.2d 679 (Me. 1972).

The appellant's third point of appeal is without merit.

The entry is:

Appeal denied.

DELAHANTY, J., sat at argument but did not participate further in the case.

All Justices concurring.