**STATE of Maine**

v.

**Thomas M. SCHUELER.**

Supreme Judicial Court of Maine.

Argued Jan. 7, 1985.

Decided Feb. 28, 1985.

James E. Tierney, Atty. Gen., Wayne S. Moss (orally), Fernand R. LaRochelle, Asst. Attys. Gen., Augusta, for plaintiff.

Law Offices of George M. Carlton, Jr., William C. Leonard (orally), George M. Carlton, Jr., Bath, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Thomas Schueler appeals from a jury verdict in the Superior Court (Lincoln County) convicting him of the murder of Ruth Hartford. 17–A M.R.S.A. § 201(1)(A) (1983). On appeal, Schueler alleges three errors in the rulings on pretrial suppression motions and an error in the jury instructions. Finding no flaw in the proceedings in the Superior Court, we affirm the conviction.

On December 22, 1982, Ruth Hartford disappeared from her home in the Boothbay area. Early on, attention focused on defendant, and numerous state police officers and Lincoln County sheriff's deputies repeatedly questioned him. Searchers discovered Hartford's body on December 26 in a crevice in the rocks behind the home where defendant lived with his mother. Hartford's hands were tied behind her back, and there was a rope from her hands to her neck. She had been strangled and stabbed several times.

## I.

As his first point on appeal, Schueler argues that the suppression justice erred in permitting the admission of a pair of his boots seized from him during a police interrogation on December 23. We do not agree. The warrantless seizure of the boots was permissible under the plain view doctrine.

In the late morning of December 23, the day after Hartford's disappearance, friends found her abandoned car and notified the Sheriff's Department. Deputy Mark Grinnan was dispatched to the location of the car, and he noticed a single set of footprints in the snow leading from the door of the driver's side of the vehicle to the roadway. These tracks, which had a "deep lug-type sole," reminded Grinnan of the boots he had seen defendant putting on earlier that morning as the deputy ques-

tioned Schueler at Schueler's home. Several hours later Trooper Bruce Rafnell of the Maine State Police requested that defendant come to the police command post for questioning. At the conclusion of the 40-minute interview, the trooper seized the boots that Schueler was wearing and sent a deputy sheriff to Schueler's home to get another pair of shoes for defendant.

 The suppression justice found that the seizure of the boots was permissible under the exigent circumstances exception to the warrant requirement.[1] On appeal Schueler argues that this ruling was erroneous. We find no need to address this issue; the seizure of the boots was in any event permitted under the plain view doctrine.

As we stated in *State v. Harriman*, 467 A.2d 745, 748 (Me.1983), "An individual who exposes an object to public view has no reasonable expectation of privacy in that object." It is beyond factual dispute that Schueler wore his boots to the interrogation at the command post. Obviously, then, the boots, which the police had probable cause to believe linked him to the disappearance of Ruth Hartford, were in the plain view of the police and subject to seizure. *See State v. McCarthy*, 355 A.2d 923, 926 (Me.1976) (seizure of the boots of a person arrested in police custody were subject to seizure both in conjunction with a lawful arrest, and under the plain view doctrine); *State v. Chapman*, 250 A.2d 203, 207 (Me.1969) (shoes in plain view when police officers entered a home with the owner's consent were subject to seizure).

## II.

Defendant's second argument on appeal is that the Superior Court erred in failing to suppress a statement made by defendant to the state police at the Scarborough barracks on December 24, 1982. Schueler contends that the police failed to provide adequately the warnings required under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and asserts that he had not voluntarily waived his right to remain silent when he spoke with the police on that day.

Again, it is unnecessary to reach defendant's arguments. We have carefully reviewed the lengthy transcript from Schueler's trial in the Superior Court and find absolutely no indication that the State, or defendant, introduced into evidence the tape recording made of Schueler's statement on December 24, or elicited any testimony concerning the substance of the statement. Thus, there is no need for us to review the purely hypothetical question of the correctness of the suppression justice's ruling on defendant's motion to suppress. *See Sevigny v. Home Builders Association of Maine, Inc.*, 429 A.2d 197, 201 (Me.1981).

## III.

In his third challenge to the rulings of the suppression justice, Schueler contends that the court erred in admitting a statement he made to the police in the late evening of December 26 and the early morning of December 27 because the statement was made involuntarily. We find no error in the ruling of the Superior Court that the statement was voluntary and admissible, and we deny this point on appeal as well.

The police found Ruth Hartford's body in East Boothbay at approximately 3:00 p.m. on December 26, 1982. After learning of the discovery the police went to defendant's residence and asked him if he would be willing to talk to them at the command post. He agreed to do so. Upon arriving at the command post, the officers read

---

**1.** The exigent circumstances exception to the warrant requirement is available if two circumstances are met: (1) the collective information available to the police provides them with adequate probable cause for the search or seizure, see *State v. Smith*, 379 A.2d 722, 724 (Me.1977), and (2) exigent circumstances prevent the police from going before a magistrate to obtain a warrant, see *State v. Dunlap*, 395 A.2d 821, 824 (Me.1978).

Schueler the warnings required by *Miranda v. Arizona* and began an interrogation that would continue until the early morning hours of December 27. At approximately 11:45 p.m. the officers questioning Schueler left the room and Deputy Sheriff Cliff Allen entered. Deputy Allen had known Schueler for a number of years, and in the words of Chief Deputy William Cade, Deputy Allen and defendant were "somewhat friends."

While alone with Schueler, Allen made a comment that he recalled in various forms in his testimony:

Tommy, I told him, I said I'm with you; let me know if I can give you a hand. I'll help you, you know, do the best you can.

I tried to tell him that, you know, I'm with him; if there's something bothering you, let it out.

Upon questioning from the court on the content of his comment, Deputy Allen responded:

And I was with him, I guess it would be, instead of the word help. I was with him. I'm trying to remember from my memory at this time.

On appeal defendant argues that the suppression justice erred in refusing to suppress the statement made to Deputy Allen and others, after Allen's conversation with Schueler.[2] Defendant asserts that his statement was prompted by a promise of leniency. As such, he continues, it was made involuntarily, and the suppression justice should not have ruled that the statement was admissible.

■ The State bears the burden of demonstrating that it is beyond a reasonable doubt that defendant made his statement voluntarily. *State v. Larrivee*, 479 A.2d 347, 349 (Me.1984). Such a determination by a suppression justice will not be disturbed by this court if there is evidence in the record that rationally supports the justice's finding. *Id.*

■ In the case at bar the suppression justice found as a fact that Deputy Allen said to Schueler, "I'm with you." The justice continued, "He [Allen] was concerned over his [defendant's] apparent state at the time, and I find that his statement I'm with you, was not motivated by Detective [sic] Allen by a desire to obtain a confession, but rather by a sincere desire to assist and render what comfort he could to Mr. Schueler at this time." The suppression justice ruled that Schueler made his statement voluntarily and that it was admissible. We hold that the justice's factual finding as to the content of Allen's statement was not clearly erroneous, and thus the record adequately supports the justice's ruling of law that Schueler made his December 26–27 statement voluntarily.

■ The officer did equivocate about his exact statement to Schueler. However, the suppression justice was clearly entitled to credit the police officer's testimony *in ultimo* that he did not promise defendant "help," but instead only expressed the thought, "I am with you." Such an expression of support and encouragement does not render a statement involuntary. In *State v. Theriault*, 425 A.2d 986 (Me.1981), we found no coercion on the part of the police when they told the suspect that "if he got it off his chest he would feel better." "It would be better to tell us [the truth]." "It would make him feel better." "People would think more of him if he got it off his chest." *Id.* at 990. The comment by Deputy Allen did not impermissibly offer leniency in return for a confession. *See State v. Tardiff*, 374 A.2d 598 (Me. 1977). Like the officers in *State v. Theriault*, Allen at most encouraged Schueler to tell the truth to the police. Thus, the suppression justice did not err when he ruled that Schueler's statement of December 26–27 could be admitted into evidence.

**2.** In that statement, introduced at trial in the testimony of a state trooper, defendant admitted that he had taken Hartford to the cave behind his home, claimed that she was suffering from a mysterious ailment, and denied that he had killed her.

## IV.

■ Finally, defendant argues that the justice presiding at his trial erred when he failed to instruct the jury that it might find defendant guilty of manslaughter, 17–A M.R.S.A. § 203 (1983), a lesser included offense to murder.[3] In the circumstances of this appeal, where defendant did not preserve any objection to the instructions, we review the failure to instruct to see if it resulted in a manifest injustice such as virtually to deprive defendant of a fair trial. *State v. Gagnon*, 379 A.2d 395, 397 (Me.1977). Finding no such error, we deny the appeal on this ground as well.

■ After the presiding justice had fully instructed the jurors on the findings they needed to make to convict Schueler of murder and after the jury had retired to deliberate, the justice called counsel into chambers to note that he had inadvertently failed to give an instruction on the crime of manslaughter. The justice offered to rectify the error, but defense counsel, conceding that as a trial tactic he had decided not to request an instruction on manslaughter, stated that he did not wish the justice to give such an additional instruction. The State similarly did not request an instruction on manslaughter. The Justice respected the wishes of the parties and gave no manslaughter instruction to the jury.

Clearly, Schueler suffered no injustice from the instructions as given. Defendant did not want the jurors instructed on the crime of manslaughter, and they were not. The justice provided Schueler a second opportunity to have the jury told of the lesser included offense, and both defendant and his counsel stated on the record that they did not want the additional instruction given. Such a course of events does not result in manifest injustice.

Defendant has failed to demonstrate any error in the rulings of the suppression justice or in the jury instructions by the presiding justice that impeaches the validity of his conviction for the murder of Ruth Hartford. Accordingly, the entry is:

Judgment affirmed.

All concurring.

---

3. 17–A M.R.S.A. § 13–A (1983) requires that if: a rational basis exists [for finding the defendant guilty of a lesser included offense], the lesser included offense shall be considered by the factfinder if requested by either the State or the defendant; *otherwise, its consideration shall be a matter within the discretion of the court.* (Emphasis added)